IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL J. RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:20-CV-723-RAH-KFP |
| ) | |
| HENRY COUNTY SHERIFF'S OFFICE, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Plaintiff Daniel J. Rodriguez, appearing pro se, brings this action against six named defendants and four unknown defendants[1], alleging several constitutional violations arising from his arrest in July 2020. Doc. 1. Before the Court are three motions to dismiss filed by all the identifiable Defendants. Docs. 12, 18, 20. The Court ordered Plaintiff to show cause why these motions should not be granted by May 24, 2021 (Doc. 24), but Plaintiff failed to respond to the Court's Order or any of the motions. Upon review of the motions and the relevant law, and for the reasons set forth below, the undersigned RECOMMENDS that two of the motions (Docs. 12, 20) be GRANTED; one of the motions (Doc. 18) be DENIED; and the pro se Plaintiff be given one opportunity to file an amended complaint to cure any procedural deficiencies.

---

[1] Specifically, Plaintiff sues Henry County, Henry County Sheriff's Office, Henry County Sheriff Will Maddox, Henry County Commissioner David Money, Abbeville Police Chief Anthony Bradley, Abbeville Mayor Billy Helms, and four unknown deputies involved in Plaintiff's arrest. *See* Doc. 1.

I.     THE COMPLAINT

Plaintiff alleges that, on July 11, 2020, he "was involved in [a] vehicle pursuit that ended in an accident." Doc. 1 at 1. After freeing himself from his vehicle, Plaintiff was approached by an unknown deputy, who came running towards him with his firearm pointed directly at him. The deputy told Plaintiff to "get on the ground you racist mother f*****." *Id.* Rodriguez ran from the deputy until he became tired and finally surrendered. While on the ground, the deputy and three other unknown deputies "jumped on top of [Plaintiff] with [two deputies] nearly pulling both shoulders out of place, while [the other two] sat on top." *Id.* One deputy placed his knee on Plaintiff's neck. The deputies' actions caused Plaintiff bruised ribs, forehead lacerations, and to temporarily lose oxygen and pass out.

Plaintiff was immediately transported to Southeast Health. While there, Defendant Chief Bradley "abused" Plaintiff. *Id.* at 2. Specifically, Chief Bradley "twisted [Plaintiff's] foot shackles" three times "causing excruciating pain." *Id*. Chief Bradley also refused to bring Plaintiff water when Plaintiff asked for it. Finally, Chief Bradley cuffed one of Plaintiff's feet to the hospital bed, where Plaintiff remained for three hours. After three hours, a deputy arrived to take Plaintiff to jail.

Upon being released from jail, Plaintiff's vehicle was impounded. Plaintiff takes issue with the fact that his vehicle was towed from the crash site without his permission and that "all parties involved in the arrest process" searched his vehicle without either permission or a warrant. *Id.* Plaintiff alleges that "[o]fficers left behind evidence that

-
-
-

proved the search was malicious and without probable cause" and that the fruits of the search resulted in "a prosecution with the State of Alabama." *Id.*

Approximately a month after his arrest, Plaintiff wrote a formal letter to Defendant Mayor Helms, via the Abbeville city website, complaining about Chief Bradley's conduct. Plaintiff did not receive a response from Mayor Helms. Plaintiff also reached out to Defendant Commissioner Money, via the Henry County website, "about [Defendant Sheriff Maddox]." *Id.* Commissioner Money also did not respond. Finally, Plaintiff spoke to Sheriff Maddox on the phone, where he "recanted all the events regarding [Sheriff Maddox's] deputies." *Id.* Sheriff Maddox told Plaintiff to "do what he had to do" and "file a complaint if [he had] to." *Id.*

Based on the above allegations, Plaintiff brings claims under the Eighth Amendment for cruel and unusual punishment; the Fourth Amendment for illegal search and seizure; and the Fourteenth Amendment for violations of equal protection. *Id.* at 9. As relief, he seeks (1) a declaratory judgment stating that Defendants violated his civil rights; (2) injunctive relief stripping each named Defendant of office and badge; (3) a mandamus judgment requiring five years of ongoing official training for any party working under or with any of the named Defendants; and (4) $250,000 in monetary damages. *Id.* at 8.

## II.  DISCUSSION

### A.  First Motion to Dismiss (Doc. 12)

In the first motion to dismiss before the Court (Docs. 12, 13), Defendants Henry County, Henry County Sheriff's Office, Sheriff Maddox, and Commissioner Money ask the Court to dismiss Plaintiff's Complaint as it pertains to them because, among other

3

reasons, (1) neither Henry County nor Commissioner Money can be held vicariously liable for the acts or omissions of the Sheriff or his employees; (2) the Sheriff's Office is not a legal entity capable of being sued; and (3) Plaintiff has failed to state a viable § 1983 claim against the Sheriff. Doc. 12 at 1. For the following reasons, the undersigned agrees.

  1. Henry County and Commissioner Money

First, Defendants are correct that Plaintiff has failed to state a claim against Henry County and Commissioner Money. Plaintiff makes only a single allegation regarding these Defendants, stating that he "reached out to [Commissioner Money] through [Henry County's] official website about the Sheriff with no response." Doc. 1 at 2. Thus, Plaintiff does not allege that either the County or the Commissioner were directly involved in, or in any way participated in, any alleged constitutional violations. Instead, construing Plaintiff's complaint liberally, it appears that Plaintiff seeks to hold the County and the Commissioner vicariously liable for the alleged acts of Sheriff Maddox or the four unknown deputies in this case, which he cannot do.

In *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987), the Eleventh Circuit asked the Alabama Supreme Court to decide whether a sheriff is an employee of a county for purposes of holding the county vicariously liable. The Alabama Supreme Court held that a sheriff is an employee of the <u>state</u>, rather than a <u>county</u>, based on the following constitutional provision: "The executive department shall consist of a governor . . . and a sheriff for each county." Article V, § 112, Alabama Constitution of 1901. Thus, under Alabama law, sheriffs are state, rather than county, officers. *See, e.g., Parker*, 519 So. 2d at 442; *McMillian v. Monroe Cnty.*, 520 U.S. 781, 793 (1997) ("Alabama sheriffs, when

4

executing their law enforcement duties, represent the State of Alabama, not their counties."). Because deputy sheriffs are considered legal extensions, or "alter egos," of sheriffs, they are also state, rather than county, officers. *Hereford v. Jefferson Cnty.*, 586 So. 2d 209, 210 (Ala. 1991).

Accordingly, Alabama courts and this district have recognized that counties cannot be held vicariously liable for the actions of a sheriff and his deputies. *See, e.g., Hereford*, 586 So. 2d at 210; *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1239 (Ala. 2006) ("Sheriffs are not county employees . . . particularly for purposes of imposing respondeat superior liability upon the county. [D]eputies . . . are likewise not county employees."); *Scott v. Lowndes Cnty.*, No. 2:11-CV-586, 2011 WL 3682793, at *1 (M.D. Ala. Aug. 23, 2011). The Commissioner also cannot be held vicariously liable for their actions in this instance. *See Ex parte Sumter Cnty.*, 953 So. 2d at 1238 ("Alabama law provides that a county commission does not have the authority, or the responsibility, to promulgate policies and work rules for employees of the sheriff's office, nor does a county commission have authority over law-enforcement policies or the training, supervision, hiring, or firing of the sheriff's employees.") (citing *Crocker v. Shelby Cnty.*, 604 So. 2d 350 (Ala. 1992)); *see also Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1289 (11th Cir. 1998) ("The duties of the counties with respect to the jails 'are limited to funding the operation of the jail and providing facilities to house the jail.'").

Here, Plaintiff does not take issue with the operation of the Henry County jail or its facilities. Instead, he takes issue with the manner in which he was arrested by the deputies and, presumably, Sheriff Maddox's and the Commissioner's failure to adequately respond

5

to his succeeding grievances. However, because neither the County nor the Commissioner have the authority to manage the Sheriff or his employees, Plaintiff's claims against Henry County and Commissioner Money fail as a matter of law. *See Turquitt*, 137 F.3d at 1289 (citing *Lockridge v. Etowah County Comm'n*, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984) and *Terry v. Cook*, 866 F.2d 373, 379 (11th Cir. 1989) (finding that Alabama county commissioners have no authority to hire or fire deputies)). Accordingly, they should be DISMISSED.[2]

2. Henry County Sheriff's Office

Second, Defendants are correct that the Henry County Sheriff's Office is not a legal entity capable of being sued. To state a viable § 1983 claim, the defendant must be an entity that is subject to suit. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Whether a defendant is subject to suit is "determined by the law of the state in which the district court is held." *Id.* at 1214 (citation and quotation omitted). In Alabama, a sheriff's office is not a legal entity subject to suit. *See Ex parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003) ("It is clear under Alabama law that the sheriff's department is not a legal entity subject to suit."); *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991) (holding cause of action against Chambers County Sheriff's Department could not be maintained because it was not a legal entity subject to suit); *Dean*, 951 F.2d at 1214 (noting that an Alabama county

---

[2] As will be discussed below, the undersigned recommends that Plaintiff be given a chance to amend his Complaint as to certain Defendants. However, the Court may properly deny leave to amend when an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). The Complaint makes clear that neither the County nor the Commissioner were present for or involved in any wrongdoing, and they cannot be held liable for the acts or omissions of either the sheriff or his deputies as a matter of law. Thus, any amendment as to Henry County or Commissioner Money in this case would be futile.

sheriff's department "is not subject to suit or liability under section 1983"); *Denmark v. Elmore Cnty. Sheriff Dep't*, No. 2:20-CV-100, 2020 WL 5650411, at *2 (M.D. Ala. Aug. 5, 2020) (holding plaintiff's claim against Elmore County Sheriff's Department failed as a matter of law). Accordingly, Plaintiff's purported claim(s) against the Henry County Sheriff's Office should be DISMISSED.[3]

### 3. Sheriff Maddox

Finally, Defendants are correct that Plaintiff has failed to state a claim against Sheriff Maddox. "It is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). A plaintiff seeking to hold a supervisor liable for constitutional violations must show either that (1) the supervisor <u>participated directly</u> in the unconstitutional conduct or (2) <u>a causal connection exists</u> between the supervisor's actions and the alleged constitutional violation. *Id.* (citing *Cottone*, 326 F.3d at 1360).

Plaintiff makes neither showing here. First, he does not allege that Sheriff Maddox participated in—or was even present at the time of—the unconstitutional conduct at issue. Second, he does not allege any facts in support of a causal connection between Sheriff

---

[3] Plaintiff cannot allege any facts that would make the Henry County Sheriff's Office a proper party to this lawsuit. Thus, any amendment as to the Sheriff's Office would be futile.

Maddox's actions and the unconstitutional conduct.[4] Indeed, Plaintiff alleges only a single allegation regarding Sheriff Maddox, stating that he "spoke to Sheriff Maddox over the phone [after he was released from jail] and recanted all the events regarding his deputies" and Sheriff Maddox told Plaintiff to "do what he had to do" and "file a complaint if [he had] to." Doc. 1 at 2. Thus, it appears that, at most, Plaintiff seeks to hold Sheriff Maddox liable for the unconstitutional acts of his subordinates on the basis of respondeat superior or vicarious liability, which he cannot do. Absent any allegations of a direct constitutional violation by Sheriff Maddox or a causal connection between his actions and the actions of his deputies, of which there are none in the Complaint, Plaintiff fails to state a § 1983 claim against the Sheriff. Accordingly, Plaintiff's purported claim(s) against the Sheriff should be DISMISSED.[5]

---

[4] A plaintiff can establish a causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003), that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991), or that there is a history of widespread conduct such that the responsible supervisor was put on notice of the need to correct the alleged deprivation, and he failed to do so, *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The deprivations that constitute widespread conduct sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* Plaintiff has made no such showing here.

[5] The Complaint makes clear that the Sheriff did not participate in any alleged wrongdoing, as Plaintiff informed the Sheriff of the deputies' alleged actions a month after they occurred. Moreover, there are no facts whatsoever that suggest a causal connection. Because Plaintiff merely seeks to hold the Sheriff vicariously liable for a single, isolated occurrence involving his deputies, which Plaintiff cannot do as a matter of law, any amendment as to the Sheriff would be futile.

B.     Second Motion to Dismiss (Doc. 20)

The next motion to dismiss before the Court is brought by current Abbeville Mayor Jimmy Money.[6] *See* Docs. 20, 21. In his motion, Mayor Money asks the Court to dismiss Plaintiff's Complaint as it pertains to him because Plaintiff has failed to state a claim against him upon which relief can be granted. Doc. 20 at 1. Specifically, Mayor Money argues that Plaintiff's claims against him constitute municipal liability claims against the City of Abbeville, and Plaintiff has failed to state a viable municipal liability claim. Doc. 21 at 7-10. For the following reasons, the undersigned agrees.

Plaintiff sues Mayor Money only in his official capacity. *See* Doc. 1 at 9. "A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, "[a] suit against a municipal officer in his official capacity is functionally equivalent to a suit against the municipality itself." *Lambert v. Herrington*, No. 1:19-00854, 2021 WL 566528, at *6 (S.D. Ala. Jan. 22, 2021).

"The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "[A]

---

[6] Plaintiff sued former Abbeville Mayor Billy Helms in his official capacity. Doc. 1 at 9. Under Federal Rule of Civil Procedure 25(d), current Abbeville Mayor Jimmy Money is automatically substituted for former Mayor Helms, and this action should proceed in Mayor Money's name. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . .").

municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "[U]nder § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Brown*, 520 U.S. at 400. Accordingly, "[t]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Plaintiff has failed to make that showing here. Even assuming, without deciding, that Plaintiff has satisfied the first element by stating a viable constitutional claim, he has failed to satisfy the second and third elements regarding a municipal custom or policy. "To establish the existence of a custom, [a] plaintiff must show a longstanding and widespread practice." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (internal quotation marks omitted) (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). "A single incident of a constitutional violation is insufficient to prove a policy or custom even [if] the incident involves several employees of the municipality." *Craig*, 643 F.3d at 1311. Indeed, "considerably more proof than [a] single incident [is] necessary." *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985).

10

Here, with respect to the Mayor and the City of Abbeville, the Complaint involves only a single incident of an alleged constitutional violation—Chief Bradley's treatment of Plaintiff in the hospital the night of his arrest. With respect to his purported municipal liability claim, Plaintiff states only that, on August 9, 2020, he "wrote a formal letter to [the Mayor] in a form of a complaint about Chief Bradley through the cities [sic] website" and received "no response." Doc. 1 at 2. Even construing Plaintiff's complaint liberally, as the Court is required to do, this lone allegation—that Plaintiff told the Mayor about a single incident regarding Chief Bradley a month after the incident occurred, and the Mayor failed to respond to Plaintiff about the incident before Plaintiff filed this lawsuit a month later—fails to establish a municipal custom or policy. Indeed, there are no facts in the Complaint to demonstrate <u>any</u> custom or policy promulgated or followed by the Mayor or City, much less one that resulted in deliberate indifference or caused a constitutional violation. There is no indication that the Mayor or City knew or had reason to know of the incident before it occurred, such that they were deliberately indifferent to or caused it. Instead, Plaintiff's sole complaint appears to be that the Mayor did not respond to his succeeding grievance in a timely manner, which is insufficient to state a municipal liability claim. Accordingly, Plaintiff's purported claims against Mayor Money should be DISMISSED.[7]

---

[7] The Complaint makes clear that neither the Mayor nor the City of Abbeville were present for or involved in any wrongdoing, and they cannot be held liable for a solitary incident involving a City employee. *See Brown*, 520 U.S. at 403. Thus, any amendment as to the Mayor or the City in this case would be futile.

11

### C.     Third Motion to Dismiss (Doc. 18)

The third motion to dismiss before the Court is brought by James Bradley, who served as the Abbeville Police Chief at the time of the alleged events.[8] Docs. 18, 19. In his motion, Chief Bradley asks the Court to dismiss Plaintiff's Complaint as it pertains to him for insufficient service of process. Specifically, he argues that because he is being sued solely in his individual, rather than official, capacity, he must be served in accordance with Federal Rule of Civil Procedure 4(e), which has not occurred.

"Generally, a government employee sued in his individual capacity must be personally served." *Reeves v. Wilbanks*, 542 F. App'x 742, 747 (11th Cir. 2013). Federal Rule of Civil Procedure 4(e) governs personal service on defendants sued in their individual capacity. Rule 4(e) provides that service of process upon an individual may be effected either (1) pursuant to the law of the state in which the district court is located or in which service is effected, or (2) by delivering a copy of the summons and complaint to the individual personally, or by leaving copies at that individual's place of abode with a person of suitable age and discretion residing at that residence, or to an authorized agent.[9] *See* Fed. R. Civ. P. 4(e). Plaintiff bears the burden of demonstrating that Chief Bradley was

---

[8] In the Complaint, Plaintiff identifies former Chief Bradley as "Anthony Bradley." Doc. 1 at 1, 6. Chief Bradley asserts that his first name is in fact James. Doc. 19 at 1, n.1.

[9] Alabama's rule governing personal service of an individual is virtually identical to Federal Rule 4(e). Specifically, Alabama's rule provides that service of process upon an individual "shall be made . . . by serving the individual or by leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process . . . ." Ala. R. Civ. P. 4(c)(1).

served in accordance with Rule 4(e). *See Martin v. Salvatierra*, 233 F.R.D. 630, 631 (S.D. Fla. 2005) ("[T]the burden of proving the validity of service of process is on the plaintiff."); *Melchor-Garcia v. Dong Ying Corp.*, No. 12-22217-CIV, 2012 WL 6553986, at *1 (S.D. Fla. Dec. 14, 2012) ("When the method of service is challenged, it is the plaintiff's burden to prove, by a preponderance of the evidence, that jurisdiction was, in fact, obtained over the defendant by timely and proper service . . . .").

The Court agrees that Plaintiff has failed to demonstrate proper service on Chief Bradley. Plaintiff's Complaint identifies Chief Bradley's address as "101 E Washington St, Abbeville, AL 36310." Doc. 1 at 6. Consequently, on March 9, 2021, the Clerk mailed a summons intended for Chief Bradley to that address.[10] Doc. 11 at 1. Chief Bradley did not personally receive the summons sent to the above address; the above address is not and was not Chief Bradley's dwelling house or usual place of abode[11]; and the summons was not delivered to an agent authorized to receive service of process on behalf of Chief Bradley. *See* Doc. 19-1. Accordingly, there is nothing before the Court to demonstrate that Rule 4(e) has been satisfied.

However, "[t]his Circuit expresses a strong preference that cases be heard on the merits," rather than be dismissed based on procedural defects. *Perez v. Wells Fargo N.A.*,

---

[10] The Clerk mailed the summons for Plaintiff because Plaintiff is proceeding in forma pauperis. *See* Docs. 4, 5.

[11] Chief Bradley contends that this is the address of Abbeville City Hall. Doc. 19-1 at 1. However, the Court takes judicial notice that the Abbeville Police Department is reportedly located at the same address. *See* http://www.cityofabbeville.org/city-services/.

774 F.3d 1329, 1342 (11th Cir. 2014) (citing *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). Accordingly, the Court "strive[s] to afford a litigant his or her day in court, if possible." *Perez*, 774 F.3d at 1342 (citing *Betty K. Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005)). Moreover, the Court notes that Plaintiff is proceeding pro se, and pro se plaintiffs should generally be granted at least one opportunity to amend their pleading—where an amendment is not deemed futile—before the Court dismisses the action. *See Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015); *see also* Fed. R. Civ. P. 15(a)(2) (noting that courts should grant leave to amend "freely . . . when justice so requires"). Accordingly, before the Court dismisses Plaintiff's claim(s) against Chief Bradley based solely on a procedural defect, it should give Plaintiff one opportunity to amend his Complaint to state a valid address for Chief Bradley at which service of process can be effected.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Two of the motions to dismiss discussed herein (Docs. 12, 20) be GRANTED;

2. Defendants Henry County, Henry County Sheriff's Office, Sheriff Maddox, Commissioner Money, and Abbeville Mayor Jimmy Money (substituted for former Abbeville Mayor Billy Helms) be DISMISSED from this action;

3. The remaining motion to dismiss (Doc. 18) be DENIED; and

4. This case be referred back to the undersigned magistrate judge for an order directing Plaintiff to file an amended complaint.

It is further ORDERED that:

On or before **August 6, 2021**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 23rd day of July, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE